UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|                        |   |                             |
|------------------------|---|-----------------------------|
| UNITED STATES          | ) |                             |
|                        | ) |                             |
| v.                     | ) | Criminal No. 09-10325-JLT   |
|                        | ) |                             |
| MICHAEL VIRDEN,        | ) |                             |
|                        | ) |                             |
| Defendant.             | ) |                             |

---

AMENDED REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255[1]

July 18, 2013

SOROKIN, C.M.J.

Michael Virden, a federal inmate serving a fifteen-year sentence in the above-captioned

case, has filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his

sentence. Doc. No. 107. In his motion, Virden levies a series of challenges to the actions of his

trial and appellate counsel, the trial prosecutor, and the basis for his sentence. For the reasons

that follow, I recommend that Virden's motion be DENIED.

I.      BACKGROUND[2]

On June 21, 2010, following a five-day jury trial, Virden was convicted of possessing a

firearm in violation of 18 U.S.C. § 922(g)(1). Doc. No. 51. The charge stemmed from an

---

[1]After filing the original Report and Recommendation in this action, Doc. No. 113, the
Court became aware of a typographical error in that document. The only amendment contained
herein is the inclusion of the word "not" in the final sentence of the fourth paragraph of the
Background section; that word was inadvertently omitted from the original Report and
Recommendation. Compare Doc. No. 113 at 4, with infra at 4. The omission and its correction
have no bearing on the legal claims presented in Virden's motion or the discussion that follows.

[2]Unless otherwise noted, the following facts are taken from the trial transcript. Doc. No.
109-2 at 17-413; Doc. No. 109-3 at 4-440.

incident in Brockton, Massachusetts on September 3, 2009, just after 10 pm.  Two members of the Massachusetts State Police Gang Unit – Sergeant Steven Lopes and Trooper Steven Connolly – were on patrol in an unmarked vehicle in Brockton, where they were working with the local police department's Gang Unit.  Upon seeing a black Lincoln with two occupants in it pull out of a gas station and speed away, Sergeant Lopes and Trooper Connolly followed and unsuccessfully attempted to catch up to the car.  They lost sight of the car when it turned onto Exchange Street.  After driving down Exchange Street and not finding the car, Sergeant Lopes and Trooper Connolly drove around the block.  Back on Exchange Street, they saw the black Lincoln backing out of a driveway next to 25-27 Exchange Street, so they pulled over just beyond the driveway.

Within seconds of pulling over, the officers heard gunshots within feet of the rear of their car.  Both officers attempted to shield themselves within the car, fearing for their safety.  When he looked up, Trooper Connolly, who was in the driver's seat, saw Virden pass his side window looking behind him and holding a silver gun in his right hand.  When Virden reached the front of the unmarked car, Sergeant Lopes saw him and also noted the silver handgun.[3]  Trooper Connolly activated the blue lights on the unmarked car.  Virden turned and ran, illuminated by the headlights of the officers' car, and Trooper Connolly drove after him.  The officers followed him down a driveway at 37 Exchange Street without losing sight of him.  Trooper Connolly

---

[3]Neither officer could describe much about the physical appearance of the man they saw with the gun based on what they observed before he was apprehended, and neither knew Virden before the night in question.  They both identified Virden as the man they saw, however, based on the fact that they followed him and arrested him nearby within less than a minute of hearing the shots, lost sight of him around a corner for only seconds, and saw no other individuals running in the area at that time.  Neither expressed any doubt in this regard.

parked halfway down the driveway, and both officers got out to continue the chase on foot. Sergeant Lopes led the way and saw Virden stumble over debris at the end of the driveway.  He also radioed for backup, alerting police dispatch that shots had been fired near his location. Virden turned into the backyard behind 37 Exchange Street, and the officers lost sight of him for a couple of seconds.

When Sergeant Lopes rounded the corner into the yard, Virden was in the middle of the yard turning toward the officer, and his right arm appeared to be completing a throwing motion. Sergeant Lopes heard a "thud" from the direction of the roof of a building abutting the backyard. Sergeant Lopes commanded, "Drop it, get on the ground, get on the ground," and Trooper Connolly placed Virden in handcuffs.  The ground around him was searched, but nothing was found.  Another trooper who arrived on the scene after the chase searched Virden and found a small amount of marijuana.  At that time, Virden claimed he had come to the area to purchase marijuana, and stated he had a scooter parked at a nearby house.  Following Virden's arrest, Brockton Police Officer Matthew Graham arrived at the scene and, after speaking with Sergeant Lopes, climbed onto the roof of the neighboring building.  There, he found a handgun which, unlike the roof itself, was not covered in dew.  The gun was a silver Taurus, Model PT-25, .25 caliber semiautomatic pistol.  It had a bullet in the chamber and six in the magazine, which had a nine-round capacity (giving the gun a total capacity of ten rounds).  In addition, three spent .25 caliber shell casings were found in the street in front of 25-27 Exchange Street.

No fingerprints were detected on the gun, but a ballistics expert concluded that the gun was in working condition, and that the three spent shell casings had come from bullets fired by that firearm.  A week or so after Virden's arrest, officers located the black Lincoln and observed

two bullet holes in it – one in the hood and one in the driver's side door.  A projectile was recovered from the driver's side door.  The weight of the projectile was consistent with a .25 caliber bullet, but the ballistics expert was unable to determine whether it had been fired by the recovered Taurus handgun.  The two men who had been in the black Lincoln on the night of the shooting told police they could not identify the shooter.

At trial, Virden stipulated that he was a convicted felon and that the gun and ammunition had traveled in interstate commerce.  In his defense, Virden called one witness, eighteen-year-old Phiniess Jay Macklin.  Macklin testified he had been socializing with six or seven other young men, including Virden, behind 25-27 Exchange Street on the night of the shooting.  He confirmed Virden had a scooter there, and that he and Virden had been smoking marijuana that Virden had purchased that night.  Sometime after 10 pm, Macklin saw a light-skinned male wearing dark pants and a dark hooded sweatshirt jump over a fence and approach the group holding a silver semiautomatic handgun.  At the time, Virden was holding his black cell phone and attempting to make a call.  Macklin testified he warned his friends about the man with the gun, then ran up the stairs of the back porch at 25-27 Exchange Street to take cover in an area where he could not be seen (and where he could no longer see the backyard).  According to Macklin, as he ran up the steps he noticed someone in a white shirt – like the one Virden had been wearing – run along the side of the house toward Exchange Street.  Moments later, Macklin heard two gunshots, followed by three more gunshots coming from the direction of the street in front of the house.

The District Court denied Virden's motions for judgment of acquittal after the government rested, at the close of all evidence, and after the jury returned its verdict.  Doc. Nos.

47, 48, 50.  Virden was sentenced to fifteen years in prison, the mandatory minimum for the

offense under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on September 21,

2010.  Doc. No. 70.  The United States Court of Appeals for the First Circuit affirmed Virden's

conviction and sentence on June 1, 2012.  Doc. No. 105.  Virden did not seek certiorari in the

United States Supreme Court.

     In January 2013, Virden timely filed a pro se motion pursuant to 28 U.S.C. § 2255, in

which he alleged:

> 1)    appellate counsel ineffectiveness for failure to challenge the government's sentencing argument that Virden should be sanctioned for exercising his constitutional right to a jury trial;[4]

> 2)    trial counsel ineffectiveness for failure to pursue a defense based on Virden's illiteracy;

> 3)    trial counsel ineffectiveness for failure to pursue a defense based on Virden's bipolar disorder;

> 4)    trial counsel ineffectiveness for failure to investigate the circumstances of Virden's prior state convictions and challenge the District Judge's reliance on them at sentencing pursuant to the Double Jeopardy clause, the separation of powers doctrine, and Shepard v. United States, 544 U.S. 13 (2005);[5]

---

[4]To the extent Virden intended to include in Ground One an attack on trial counsel's failure to adequately consult with Virden prior to trial, he fails.  See Doc. No. 107 at 3 (stating trial counsel "only visited him in custody for a total of (four) hours, leading up to a trial by jury").  There is no per se rule regarding the amount of time a defense attorney must spend with his client prior to trial in order to be constitutionally effective, and Virden has made no specific assertions about why more time was necessary in his case or how he was prejudiced by trial counsel's failure to make additional visits.  See id. at 4 (vaguely asserting additional time here might have uncovered "important alternative strategies and defenses" and "the lack of bona fide testimonial evidence to convict" Virden; relying on a death penalty case in which trial counsel spent a total of sixteen hours preparing for trial and put forth no defense during the guilt phase, facts which are wholly distinguishable from those presented here).

[5]To the extent Virden intended to include in Ground Four a challenge to the use of prior convictions in violation of some alleged state-law statute of limitations, such a claim would not

5)      trial counsel ineffectiveness for failure to investigate another individual who was involved in a separate incident involving a similar gun, and to pursue a defense based on the presence of a second shooter;

6)      trial counsel ineffectiveness for failure to cross-examine and impeach Sergeant Lopes and Trooper Connolly about inconsistencies in their testimony regarding Virden's cooperation at the time of his arrest;[6]

7)      trial counsel ineffectiveness for failure to cross-examine and impeach Sergeant Lopes and Trooper Connolly about inconsistencies in their descriptions of the gun they saw in Virden's hand before apprehending him;[7]

8)      trial counsel ineffectiveness for conspiring with the government to withhold from Virden and from the jury certain information contained in, or different versions of, police radio transmissions from the night of the incident (and prosecutorial misconduct for withholding such information); and

9)      trial and appellate counsel ineffectiveness for failing to investigate Virden's prior state convictions, present evidence to the jury at trial contesting those convictions, and contest the use of convictions where the underlying records had been destroyed in a flood.

Doc. No. 107 at 3-24.[8]

---

be cognizable in a petition pursuant to § 2255, nor is the Court aware of any legal requirement that would foreclose consideration of prior convictions which, in this case, were all less than ten years old.

[6]To the extent Virden intended to include in Ground Six an attack on trial counsel's failure to explore "a rumor in the neighborhood, that has yet to be fully authenticated, that [one testifying officer] is currently under investigation for embezzlement," Doc. No. 107 at 15, such vague allegations cannot support a meritorious claim. He has not alleged any basis for or source of the rumor, whether the investigation was ongoing at the time of the trial, or whether he or his trial counsel knew or should have known about it at that time.

[7]To the extent Virden intended to include in Ground Seven a challenge to the sufficiency of evidence supporting his conviction based on the lack of exhibits or testimony regarding registration and ownership of the firearm at issue, Doc. No. 107 at 17, such evidence was not required to prove possession of the firearm where two eye witnesses (Trooper Connolly and Sergeant Lopes) testified they observed Virden holding it.

[8]To the extent Virden intended to raise the substantive claims underlying the counsel ineffectiveness claims discerned by the Court and listed above, such claims were waived when they were not raised on direct appeal and, in any event, are meritless for the reasons set forth in

The government has opposed Virden's motion.  Doc. No. 109.  Virden filed a reply brief in which he responded to the government's arguments, sought appointment of counsel and discovery, and summarily moved to strike the government's responsive brief.  Doc. No. 111. The District Judge referred Virden's motion to the undersigned for a Report and Recommendation.  Doc. No. 110.

## II.   LEGAL FRAMEWORK

Prisoners serving federal sentences "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if: 1) "the sentence was imposed in violation of the Constitution or laws of the United States"; 2) "the court was without jurisdiction to impose such sentence"; 3) "the sentence was in excess of the maximum authorized by law"; or 4) the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "In seeking to collaterally attack their convictions under section 2255, defendants bear the burden of establishing by a preponderance of the evidence that they are entitled to relief."  United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).  In assessing whether a defendant has met this burden, the court generally must accept his factual averments as true, "but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."  United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

In general, if a defendant failed to raise an issue on direct review, or if he failed to preserve an objection regarding the issue at trial, the claim is considered procedurally defaulted for purposes of any subsequent motion pursuant to § 2255.  Bucci v. United States, 662 F.3d 18, 29 (1st Cir. 2011).  Such a claim cannot provide a basis for relief under § 2255 unless the

the discussion that follows.

7

defendant establishes cause for the default, as well as actual prejudice resulting from the error.

Id.; see Massaro v. United States, 538 U.S. 500, 504 (2003).  Counsel ineffectiveness claims are

an exception to this procedural default rule; such claims may be raised for the first time in the

context of § 2255 proceedings.  Massaro, 538 U.S. at 504.

 In order to establish that his counsel was constitutionally ineffective, a defendant must

satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "First, the

defendant must show counsel's performance was deficient," which requires showing "counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the

Sixth Amendment."  Id. at 687.  "Second, the defendant must show the deficient performance

prejudiced the defense."  Id.  "Unless a defendant makes both showings, it cannot be said that the

conviction or . . . sentence resulted from a breakdown in the adversary process that renders the

result unreliable."  Id.  As the Supreme Court repeatedly has emphasized, "[s]urmounting

Strickland's high bar is never an easy task."  Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010);

accord Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

 Counsel's performance is measured objectively, considering only what is "reasonable[]

under prevailing professional norms."  Id. at 687-88; accord Premo v. Moore, 131 S. Ct. 733,

740 (2011).  Federal courts must be "highly deferential" and "indulge a strong presumption" that

counsel's challenged actions might be considered sound strategy under the circumstances.

Strickland, 466 U.S. at 689; accord Knowles v. Mirzayance, 556 U.S. 111, 124 (2009).  "It is

'[r]are' that constitutionally competent representation will require 'any one technique or

approach.'"  Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (quoting Richter, 131 S. Ct. at

779).  A strategic choice "made after thorough investigation of law and facts relevant to

plausible options [is] virtually unchallengeable." Strickland, 466 U.S. at 690.  The relevant

inquiry, then, is not whether counsel was "prudent or appropriate," United States v. Cronic, 466

U.S. 648, 665 n.38 (1984), but rather whether the proceedings resulting in the defendant's

conviction and sentence were fair, see Strickland, 466 U.S. at 686.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at

694; accord Knowles, 556 U.S. at 127; Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007).  It is

not sufficient "to show that the errors had some conceivable effect on the outcome of the

proceeding." Strickland, 466 U.S. at 693; accord Gonzalez-Soberal v. United States, 244 F.3d

273, 278 (1st Cir. 2001).  To warrant relief, the defendant must show that counsel's errors were

"so serious as to deprive [him] of . . . a trial whose result is reliable." Id. at 687.

III.    DISCUSSION

A.      Claims Regarding Trial Defenses

Two of Virden's ineffectiveness claims relate to trial counsel's failure to assert defenses

based on Virden's alleged illiteracy and bipolar disorder.[9] Doc. No. 107 at 5-8 (grounds two and

three).  The government argues these alleged conditions were immaterial to the defense Virden

pursued at trial, which rested on a claim that another individual was the shooter and possessor of

---

[9]Although Virden summarily asserts within his second claim regarding illiteracy that
"defense counsel could have presented an 'alibi,'" he sheds no light on the nature of that alibi
nor any evidence or witnesses in support thereof.  Doc. No. 107 at 5.  He has not, therefore,
stated an ineffectiveness claim on that basis.  See Rule 2(b)(2) fol. 28 U.S.C. § 2255 (requiring
petitioners to "state the facts supporting each ground" raised in a § 2255 motion).  It bears noting
that the only defense witness at trial placed Virden near the scene of the shooting just before it
occurred, and could not account for Virden's actions or whereabouts at the time of the shooting.

the firearm.  Doc. No. 109 at 11-12.

Although the government's point is well taken, Virden's claims regarding illiteracy and bipolar disorder fail for a more fundamental reason.  Even assuming he suffered from both diagnoses at the time of his trial,[10] he cannot establish that either condition would provide a meaningful defense to the sole crime with which he was charged – possession of a firearm and ammunition by a felon.  "To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) the defendant possessed a firearm; (2) the firearm had traveled in interstate commerce; and (3) the defendant had been convicted of a felony prior to his possession of the firearm."  United States v. Pratt, 568 F.3d 11, 15 (1st Cir. 2009).  Virden has not explained how illiteracy or bipolar disorder might bear on any of these three elements.  Nothing about the facts of this case or the elements of the crime at issue implicate Virden's ability to read or write, nor his mental state (beyond whether he knowingly possessed the firearm).  See United States v. Small, 640 F.3d 425, 426-27 (1st Cir. 2011).  Virden was not charged, for example, with intentionally shooting someone or with forging paperwork related to firearm.  Under the circumstances, the Court cannot conceive of a reasonable defense strategy involving Virden's alleged illiteracy or bipolar disorder, besides relying on such facts as mitigation at sentencing (as Virden's counsel did, see Doc. No. 85 at 13).[11]  Nor can the Court imagine any conceivable effect the introduction of such evidence at

---

[10]Virden has submitted no documentation establishing he has been diagnosed with either condition by any qualified professional.  The Court, however, will assume for present purposes that Virden suffers from both.

[11]Virden suggests "the outcome of the sentencing would have been different" had trial counsel "pursued some form of agreement or plea, due to the client's lack of comprehension regarding his illiteracy."  Doc. No. 107 at 6.  Just as the Court is not persuaded evidence showing

trial would have had on the outcome of the proceedings.  As such, Virden has not satisfied

<u>Strickland</u>'s standard, and the second and third claims in his motion fail.

Virden advances one additional ineffectiveness claim related to his trial defense, alleging

trial counsel should have investigated and presented evidence regarding another individual who

was in jail with Virden and could have been the firearm's true possessor.  Doc. No. 107 at 11-12

(ground five).  Once again, the government argues such evidence would have been irrelevant in

light of the government's "very specific" trial evidence.  Doc. No. 109 at 12-13.

There are two problems with Virden's fifth claim.  First, Virden has not adequately

"state[d] the facts supporting [this] ground."  Rule 2(b)(2) fol. 28 U.S.C. § 2255.  Besides

providing a name for the individual he claims trial counsel should have investigated, he provides

only vague suggestions that the individual might have been implicated as the shooter on the

night in question.  The extent of Virden's allegations are:

> [O]ne N[adhi] K[abrah], of the Brockton, Massachusetts area, was in jail for an
> incident involving a .25 caliber pistol, ***that may or may not have also been a
> Taurus***, .25 caliber pistol, like the one recovered from the roof-top, the night of
> Mr. Virden's arrest. . . . Nahdi Kabrah was in jail [at the same time as] Mr. Virden
> was . . . .

Doc. No. 107 at 11 (emphasis added); <u>see id.</u> (suggesting further that police may have "for some

reason" "cover[ed] up" any link between Mr. Kabrah and the shell casings recovered in order to

support Virden's arrest "for the motive of justifying their jobs").

> ***One week prior to Mr. Virden's arrest***, a .25 caliber round was allegedly fired ***in
> the Brockton area***, and a young man by the name of Nahdi Kabrah was jailed for
> this alleged shooting.  This occurred during a time frame close to the alleged

---

illiteracy reasonably would have impacted the verdict in light of the elements of the crime
charged, Virden has not established – and the Court cannot conclude – that the government
would have set aside the applicable fifteen-year mandatory sentence based on alleged illiteracy.

shots fired by the defendant . . . . [W]hen you look at the possibility of another
shooter with another (.25) caliber pistol, as what Nahdi Kabrah was allegedly in
jail for, [trial counsel] should have moved the Government to subpoena Nahdi
Kabrah to the trial stand.

Id. at 12 (emphasis added).  Virden cannot establish entitlement to relief under § 2255 based on

his own speculation concerning an incident that occurred a week before the night of Virden's

arrest, apparently involving a single shot fired by an unknown type of .25 caliber weapon

somewhere in the City of Brockton or the surrounding area.

Second, even assuming Virden's speculation has some basis in fact, he has not

established his trial counsel's ineffectiveness.  Counsel's conduct must be considered based on

"the facts of the particular case from counsel's perspective at the time."  Sleeper, 510 F.3d at 38.

Although Virden suggests this evidence "was available at the time" of trial, Doc. No. 107 at 11,

he does not aver that trial counsel knew or should have known – either from public reports or

information passed along by Virden himself – about the incident involving Mr. Kabrah.

Counsel's performance cannot be deemed deficient for failing to investigate or offer evidence of

which he was not aware, unless there is some basis for concluding a reasonable attorney in his

position should have been aware of it.  Virden has offered no basis for reaching such a

conclusion here.  Moreover, Virden has not established that information regarding Mr. Kabrah, if

offered at trial, would have altered the result of the proceedings, particularly where Mr. Kabrah's

shooting allegedly involved a different number of shots fired on a different date, and where the

jury apparently credited the testimony of Trooper Connolly and Sergeant Lopes about seeing

Virden with a silver gun in his hand on the night in question.[12]  Accordingly, Virden's fifth claim

---

[12]Contrary to Virden's suggestion, trial counsel did call a defense witness to testify
regarding a possible shooter besides Virden.  Compare id. at 12 ("The Defense never pursued the

is meritless.

      B.      <u>Claims Regarding Witness Examinations</u>

Two of Virden's counsel ineffectiveness claims stem from attacks on the sufficiency of

trial counsel's efforts to cross-examine and impeach Trooper Connolly and Sergeant Lopes, both

of whom testified they witnessed Virden carrying a firearm.  Specifically, Virden complains that

trial counsel failed "to move for impeachment" of the officers based on their inconsistent

testimony regarding whether Virden was cooperative or had to be tackled when arrested, and the

nature and size of the firearm seen in his hand.  Doc. No. 107 at 13-17 (grounds six and seven).

As the government argues, Doc. No. 109 at 13, trial counsel both elicited testimony

regarding the precise inconsistencies Virden identifies, and argued to the jury in closing that the

officers' testimony should be rejected based on such inconsistencies.  <u>See</u> Doc. No. 109-2 at

119-20, 136, 271-73, 309 (reflecting cross-examination of both officers revealing discrepancies

in their testimony regarding whether Virden was tackled and how large the gun appeared); Doc.

No. 109-3 at 385-86, 388 (reflecting closing argument urging that those discrepancies

undermined the officers' versions of events).  Although the jury apparently rejected trial

counsel's argument and credited the officers' testimony despite the discrepancies about the

tackle and the size of the firearm they saw (a determination which this Court does not find

unreasonable), trial counsel's performance cannot be deemed deficient for the reasons cited by

Virden in his sixth and seventh claims where counsel did precisely what Virden argues he should

---

idea of a (2nd nearby shooter) with a (.25) caliber pistol, or a revolver."), <u>with</u> Doc. No. 109-3 at
280, 315-26 (trial testimony by defense eye witness regarding a different man with a silver
handgun).  The existence of another shooter was also explored by trial counsel in his closing
argument.  <u>See</u> Doc. No. 109-3 at 402-06.

have done.  Under these circumstances, Virden cannot satisfy the first prong of the Strickland standard, let alone demonstrate prejudice.

In another claim, Virden alleges trial counsel was ineffective – and the prosecutor engaged in misconduct – because only redacted versions of police radio transmissions from the night in question were presented to the jury during examinations of the officers heard on the transmissions.  Doc. No. 107 at 18-20 (ground eight).  In response, the government summarizes the portions of the record showing how the transmissions were used and what was redacted from them, and explains Virden's misunderstanding of the facts surrounding this issue.  Doc. No. 109 at 13-17.

The trial record reveals that defense counsel and the government had negotiated certain redactions of the radio transmissions, resulting in at least three versions of the recording and transcript of those transmissions.  The government played the first, and shortest, version during its direct examination of Sergeant Lopes.  Doc. No. 109-2 at 227-29.  During cross-examination, trial counsel played the second version, which repeated the portions the government had used but went on to include a description of the occupants of the black Lincoln and a statement by Sergeant Lopes that officers were looking for a "revolver" (as opposed to a semiautomatic handgun).  Id. at 341-50.  The third version, which was a complete recording of the transmission, featured Sergeant Lopes stating, "He threw the gun, he threw the gun onto the roof."  Id. at 371.  That version was not played, as the District Judge sustained defense counsel's objection to it.  Id.

Virden has offered no more than speculation that the redacted portion of the radio transmission contained exculpatory evidence.  In fact, discussions between counsel and the District Judge contained in the trial transcript reflect that the redaction at issue was a statement

14

that Virden had thrown a firearm onto a roof (where the gun at issue was ultimately recovered).
See id. at 222, 371.  In light of the inculpatory nature of that statement and the fact that it would
have corroborated Sergeant Lopes's testimony, trial counsel reasonably sought to keep it from
the jury, and Virden suffered no prejudice as a result of its redaction.  There is no evidence
suggesting any improper collusion occurred between trial counsel and the government with
respect to redaction of the radio transmissions, nor is there any support in the law for Virden's
apparent belief that trial counsel was obligated to obtain his signature on a "waiver form" before
negotiating redactions of inculpatory information from the transmissions and related transcripts.
See Doc. No. 107 at 20.  Accordingly, Virden's eighth claim is without merit.

      C.      Claims Regarding Sentencing

      Virden's three remaining claims related to his sentencing.[13]  The first alleges appellate
counsel ineffectiveness for failing to challenge statements made by the government in its
sentencing memorandum that Virden construes as an unconstitutional request that he be
sanctioned for exercising his right to a jury trial.  Doc. No. 107 at 3-4 (ground one); see Doc. No.
62 at 1-2, (distinguishing the case from "more routine felon-in-possession cases," in part,

---

[13]The government construes these claims as direct attacks on Virden's sentence and
argues he waived them by not raising them on direct appeal.  Doc. No. 109 at 17-18.
Considering the totality of Virden's allegations, however, the Court concludes his claims are
more fairly construed as assertions of appellate and/or trial counsel ineffectiveness.  See, e.g.,
Doc. No. 107 at 3 (specifically referencing "Ineffective Assistance of appellate counsel" in the
context of ground one); id. at 9-10 (alleging in ground four a "cursory" investigation into prior
offenses and explicitly referencing "Ineffective Assistance"); id. at 21-24 (including in ground
nine references to appellate counsel's failure to challenge prior convictions, trial counsel's
failure to explore them during trial, and Strickland).  As such, they are not waived.  Massaro, 538
U.S. at 504.

because Virden "did not accept responsibility and went to trial"). This claim fails.[14]

Virden's trial counsel objected to the government's argument (which the prosecutor did not reiterate during the sentencing hearing itself), and the District Judge did not cite it as a basis for his sentence. See Doc. No. 85 at 2-9, 12, 19-20. The fifteen-year sentence imposed here was far below both the sentence recommended by the government (292 months) and the lowest end of the relevant range under the Sentencing Guidelines (262 months). See id. at 2-3. In fact, Virden received the minimum sentence allowed by law, in light of the charge and his prior criminal convictions.[15] Id. at 19-20; see 18 U.S.C. § 924(e). There is nothing in the record to suggest that, absent any improper references to Virden's decision to go to trial, the District Judge would have – or could have – imposed a lesser sentence. See Doc. No. 85 at 20 (imposing the sentence "based on the totality of the circumstances," and explaining it was "an adequate amount of time" to constitute "punishment" without being either "excessive" or too "easy").

Under these circumstances, Virden can show neither deficient performance by appellate counsel, nor prejudice resulting from counsel's failure to pursue the issue on appeal. See Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (counsel cannot be ineffective for failing to raise a meritless issue). Thus, the first claim in Virden's motion does not warrant relief.

---

[14]Although the Court will assume, for present purposes, that the government's comments constituted an impermissible request to punish Virden for exercising his constitutional rights, prosecutors are not categorically barred from observing that a defendant who has not pleaded guilty and thereby accepted responsibility for his conduct is not entitled to the same leniency that might be accorded to a defendant who has demonstrated remorse via his plea. See United States v. Crocker, 788 F.2d 802, 809 (1st Cir. 1986) (noting a constitutionally permissible "reality of our system of criminal justice [is] that a defendant who opts to go to trial rather than negotiating a plea runs the risk of a harsher sentence than he would have received by pleading guilty").

[15]The applicability of the ACCA mandatory minimum and Virden's attacks on the use of his prior convictions to trigger it will be discussed further below.

Virden's final two claims fault his counsel for failing to prevent or contest the use of his prior state convictions at sentencing.  Specifically, Virden contends trial counsel should have raised double jeopardy and separation of powers objections, required the government to prove the prior convictions to the jury during trial, and presented evidence during trial and at sentencing contesting the validity of the convictions.  Doc. No. 107 at 9-10, 21-24 (grounds four and nine).  He further asserts appellate counsel should have preserved such issues on appeal and reiterated trial counsel's objection to any reliance on certain prior convictions, the records of which had been destroyed in a flood.  Id. at 21.  None of these arguments, each of which will be addressed in turn, supports an ineffectiveness claim.

First, any objection to the reliance on Virden's prior convictions at his sentencing based on double jeopardy would have been patently meritless.  It is "well established that there is no double jeopardy bar to the use of prior convictions in sentencing a persistent offender."  Caspari v. Bohlen, 510 U.S. 383, 391 (1994).  Accordingly, counsel was not ineffective for failing to assert such an objection.

Second, Virden's separation of powers claim assumes his sentence was dictated by a presentence report prepared by the United States Probation Office, which he suggests is either its own branch of government or is part of the executive branch.  Neither his assumption nor his suggestion is true.  The District Judge imposed Virden's sentence – after consideration of information received from the government, Virden's trial counsel, and the Probation Office (which is part of the District Court, not the executive branch).  Furthermore, the sentence imposed was well within the permissible range of sentences allowed by laws passed by Congress.  See 18 U.S.C. § 924(e).  Counsel, therefore, was not obligated to raise a specious

separation of powers objections at Virden's sentencing.

Third, Virden's claim that trial counsel should have required the government to prove his prior convictions, used to establish the applicability of the ACCA, to the jury at trial is foreclosed by a litany of decisions binding on this Court.  Indeed, the Supreme Court and the First Circuit "have ruled with a regularity bordering on the monotonous" that "sentence-enhancement provisions based upon prior criminal convictions" do not require proof to a jury beyond a reasonable doubt.  United States v. Moore, 286 F.3d 47, 51 (1st Cir. 2002); see Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).  Thus, counsel could not have been ineffective for failing to take this legally unsupported position.

Fourth, in suggesting his counsel should have contested the validity of his previous state convictions at his sentencing, Virden seeks a collateral attack on his prior record that the law does not allow.  Pursuant to Custis v. United States, defendants may not collaterally attack at their sentencing hearings prior convictions relied upon to support the imposition of a mandatory sentence pursuant to the ACCA.  511 U.S. 485, 487 (1994).  Similarly, Virden cannot wage such a collateral attack on his prior state convictions in the context of the instant § 2255 motion.[16]  See Daniels v. United States, 532 U.S. 374, 377 (2001).  As such, his ineffectiveness claim in this regard – as well as the underlying substantive attack on his prior convictions, insofar as he seeks to assert it directly – provides no basis for relief.

Finally, Virden suggests both trial and appellate counsel should have challenged the reliance on prior state offenses for purposes of the ACCA where Virden disputed the validity of

---

[16]If Virden wishes to collaterally challenge his prior state convictions, he must do so via federal or state habeas proceedings related to those cases directly.  He may not do so here through self-serving affidavits proclaiming his innocence.  See Doc. No. 107 at 26-27.

those convictions and records of the offenses had been destroyed.  Doc. No. 107 at 9-10, 21-24.

Although he contests the facts that supported his prior convictions, argues he was "penalized

wrongly for" them, and arguably suggests they did not constitute violent crimes for purposes of

the ACCA, id. at 21, he does not dispute that he was, in fact, convicted of the various offenses in

state court.  The fact of the convictions, rather than the facts underlying them, is what matters for

purposes of the ACCA.  See Descamps v. United States, 133 S. Ct. 2276, 2283 (2013)

(reaffirming the application of a "formal categorical approach" to determining whether a prior

conviction counts as a predicate offense for ACCA purposes, and generally prohibiting

sentencing courts from looking beyond the statutory elements of a crime to the facts underlying

the prior convictions); Shepard v. United States, 544 U.S. 13, 17 (2005) (same).[17]

   At least three of Virden's prior state offenses – including convictions for resisting arrest,

larceny from a person, and possession with intent to distribute a class B controlled substance,

Doc. No. 109 at 18 – constitute violent felonies and are predicates for ACCA's fifteen-year

mandatory minimum under binding First Circuit precedent.  See United States v. Rodriguez, 659

F.3d 117, 118-19 (1st Cir. 2011) (larceny from a person is a violent felony for ACCA purposes);

United States v. Weekes, 611 F.3d 68, 72 (1st Cir. 2010) (resisting arrest is a violent felony for

ACCA purposes, as is a drug offense carrying a maximum allowable penalty of ten years or

---

[17]Insofar as Virden also objects to the reliance on such offenses in the context of
calculating the applicable Sentencing Guidelines range, that calculation was largely irrelevant
here, where the District Judge imposed a mandatory sentence under the ACCA, and one that was
far below the calculated range.  In any event, the principles that guide consideration of prior
convictions for ACCA purposes are equally applicable to the Sentencing Guidelines.  See, e.g.,
United States v. Ramirez, 708 F.3d 295, (1st Cir. 2013) (applying the categorical approach,
rather than an evaluation of the defendant's particular conduct in committing a prior offense, for
purposes of assessing prior crimes of violence under the Guidelines).

more); Mass. Gen. Laws ch. 94c, § 32A(a) (possession with intent to distribute a Class B

controlled substance is punishable by up to ten years imprisonment under Massachusetts law).

Under these circumstances, the District Judge appropriately invoked the ACCA.  Neither trial

nor appellate counsel could have pursued in the federal proceedings any challenge to the facts

underlying Virden's prior convictions – whether or not the related police reports were available

– that would have avoided the application of the fifteen-year mandatory minimum.  As such,

Virden's fourth and ninth claims fail.

> D.    Evidentiary Hearing, Certificate of Appealability, and Other Issues

Virden bears the burden of establishing he is entitled to an evidentiary hearing or

discovery.  McGill, 11 F.3d at 225; Rule 6 fol. 28 U.S.C. § 2255.  An evidentiary hearing is not

required where the motion "is inadequate on its face," nor where a facially adequate motion "is

conclusively refuted as to the alleged facts" by the record before the court.  McGill, 11 F.3d at

225 (internal quotations and citations omitted).  A court need not permit discovery except "for

good cause," and only after the party requesting the discovery articulates reasons for the request

and specifies what discovery is required.  Rule 6(a)-(b) fol. 28 U.S.C. § 2255.  Similarly,

appointment of counsel is warranted only where an evidentiary hearing is necessary, Rule 8(c)

fol. 28 U.S.C. § 2255, or where "the interests of justice so require," 18 U.S.C. § 3006A(a)(2).

Virden has failed to show he is entitled to an evidentiary hearing.  His claims are each

either flawed as a matter of law or conclusively refuted by the trial record.  To the extent he

seeks discovery or appointment of counsel, Doc. No. 111 at 1-2, Virden has established neither

good cause for discovery nor that the interests of justice require appointment of counsel.  To the

extent he asks the Court to strike the government's responsive brief, id. at 4, his disagreement

with the positions taken by the government is not grounds to strike its memorandum. Finally, because "reasonable jurists could [not] debate" the resolution of Virden's motion, he has not made "a substantial showing of the denial of a constitutional right" and, thus, no certificate of appealability should issue. Slack v. McDaniel, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).

IV.    CONCLUSION

Because Virden has not demonstrated he is entitled to relief under § 2255, I respectfully recommend that his motion to vacate, set aside, or correct sentence be DENIED, and that no certificate of appealability should issue.[18]

   /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge

---

[18]The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b); Rule 8(b) fol. 28 U.S.C. § 2255. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to file timely objections will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).